[Crim. No. 530. Third Appellate District.—August 3, 1920.]

THE PEOPLE, Respondent, v. ALBERT TINNEN, Appellant.

[1] CRIMINAL LAW—ADMINISTERING POISON WITH INTENT TO KILL—PLEADING—USE OF WORD "MURDER"—EFFECT OF.—The use of the word "murder," in addition to the word "kill," in a complaint or deposition charging the crime of administering poison with intent to kill does not change the offense from that denounced by section 216 of the Penal Code to that of assault with the intent to commit murder, denounced by section 217 of the Penal Code, if the accusatory pleading otherwise charges the offense defined by section 216.

[2] ID.—SUFFICIENCY OF COMMITMENT—VARIANCE.—A commitment, indorsed on the back of a complaint or deposition charging the commission of the crime denounced by section 216 of the Penal Code, reciting that it appears that the offense of assault with intent to commit murder "as charged in the within complaint" has been committed, does not show a variance between the offense charged and that for which the defendant was committed.

[3] ID.—DEATH NOT CAUSED—OMISSION TO ALLEGE—SUFFICIENCY OF INFORMATION.—An information charging the crime of administering poison to another with intent to kill said person is sufficient, although such pleading fails or omits to state that death was not caused by the alleged act of administering poison to the complaining witness.

[4] JURIES AND JURORS—DENIAL OF CHALLENGES FOR CAUSE—WHEN REVERSIBLE ERROR.—Errors committed in overruling challenges for cause are not grounds for reversal, unless it is shown that an objectionable juror has been forced upon the challenging party after he had exhausted his peremptory challenges.

[5] CRIMINAL LAW — ADMINISTERING CHLOROFORM WITH INTENT TO KILL—ACTION OF POISON—INSTRUCTIONS.—In a prosecution for the crime of administering poison to another with intent to kill said person, an instruction by which the jury are told that if they are satisfied beyond a reasonable doubt that the defendant did administer chloroform to the complaining witness "by causing her to inhale the same, with the intent to kill" her, "and that chloroform is a poison," then it is their duty to find a verdict of guilty against the defendant, does not take from the jury the determination of the question whether chloroform is a poison; neither is such instruction erroneous in that it does not require the jury to trace the action of the chloroform in its effect upon specific organs of the body or the channels into or through which it was necessary for it to pass to produce unconsciousness or death.

APPEAL from a judgment of the Superior Court of Tehama County. J. F. Ellison, Judge. Affirmed.

The facts are stated in the opinion of the court.

James T. Matlock for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was informed against by the district attorney of Tehama County, in the superior court thereof, for the crime of administering poison to another person maliciously and with intent to kill said person. He was tried and convicted by a jury under said information, and he brings this appeal to this court from the judgment and the order denying his motion for a new trial.

The point first made by the appellant is that the court below erred in denying his motion to set aside the information on the ground that he had not been legally committed by a magistrate and that he had not been committed by the magistrate for the offense charged in the information.

The information is founded on section 216 of the Penal Code, which is in language as follows: "Every person who, with intent to kill, administers or causes or procures to be administered, to another, any poison or other noxious or destructive substance or liquid, but by which death is not caused, is punishable by imprisonment in the state prison not less than ten years."

The point that the accused was not legally committed is founded upon the theory that there is a variance between the offense for which the defendant was committed and the offense set forth in the information. In fact, both of the two grounds upon which the motion to set aside the information was based involve practically the same question, to wit: whether the information states a different offense from that for which the defendant was committed by the magistrate.

Preliminarily, we may consider the point made by the attorney-general on the threshold of his discussion of the question now in hand, that there is not presented here a properly authenticated record upon the motion to set aside the information and that, therefore, this court cannot

review that question. The contention is that the complaint
filed before the magistrate and the commitment issued are
not authenticated according to the requirements of the law
and the rule respecting such records on appeal, hence, so it
is argued, it does not appear from or in this record whether
the court below, in hearing and deciding the motion to set
aside the information, had before it and considered the
documents named. The record discloses that, in the proceed-
ing on the motion, the complaint and the commitment were
introduced in evidence, and we think it is sufficiently made
to appear that the court considered said documents at the
hearing and in the decision of the motion. But if it were
necessary to concede that there is some doubt whether the
record upon the motion to set aside the information fully
.complies with the rule, we shall, nevertheless, consider the
merits of the question growing out of said motion and urged
here on the order of the court denying the same.

The commitment is indorsed on the back of the complaint
or deposition upon which the warrant of arrest was issued
and the charge examined, and, therefore, as will later be
better understood, the decision of the question in hand will
require a consideration of said complaint or deposition.
That document reads: ''That said John Doe on the 6th day
of February, 1918, and before the filing of this complaint at
and in the City of Corning in the said County of Tehama,
State of California, did wilfully, unlawfully and feloniously
and with malice aforethought, administer to one Margery
Cockcroft a certain deadly poison to wit: chloroform, with
the unlawful and felonious intent then and there and
thereby to willfully and with malice aforethought to kill and
murder the said Margery Cockcroft, all of which is con-
trary to the statute in such cases made and provided, and
against the peace and dignity of the people of the State of
California.''

The commitment is in the following words, the same being
indorsed on the back of the complaint: ''It appearing to
me that the offense of assault with intent to commit murder
as charged in the within complaint has been committed, and
that there is sufficient cause to believe the within-named
Albert Tinnen charged as John Doe in the within complaint
is guilty thereof, I order that he be held to answer the
same, and committed to the sheriff of the county of Tehama,

and that he be admitted to bail in the sum of five thousand dollars, and he is committed to the sheriff of Tehama County, until he give such bail.''

·[1]   It will be observed that the complaint or deposition charges the crime of administering poison to one Margery Cockcroft with the intent to ''kill and murder'' said Margery Cockcroft.  This is substantially in the language of section 216 of the Penal Code.  The word ''murder,'' it is true. is not in the section, and it is wholly unnecessary to use that word in charging the offense, but if used even in an indictment or an information, it could not change the offense from that denounced by section 216 to that of assault with the intent to commit murder if the accusatory pleading otherwise charged the offense defined by section 216.  [2]   The commitment, however, specifically declared that the accused was held for trial for the crime charged in the ''within complaint.''  This was sufficient as a commitment for the crime so charged.  The words in the commitment immediately preceding that language, to wit, ''assault with intent to commit murder,'' merely involved an ineffectual or a futile attempt on the part of the magistrate to characterize generically the character or nature of the crime charged in the complaint and for which he had committed the accused. If a complaint or deposition filed before a magistrate were to charge, in legally appropriate language, a person with murder and, that crime having been shown, the magistrate should in his commitment state: ''It appearing to me that the crime of assault with intent to commit murder has been committed, *as charged in the within complaint,*'' etc., no one would for a moment contend that the commitment was not for murder and that the erroneous designation in the commitment by the magistrate of the crime so charged would control or modify the general words indicating the crime for which the accused was held or justify the conclusion that the commitment was not for the crime specifically charged in the complaint on which the commitment was indorsed. The commitment and the so-called complaint on which it is indorsed must be read together to ascertain for what offense the accused is committed where the commitment itself does not attempt to define the crime for which the accused is held but merely in general language states that the accused is held for the crime as it is charged in the complaint.  In

other words, in such case, the complaint itself becomes an essential part of the commitment, and necessarily we must look to the complaint to ascertain for what specific offense the accused has been committed. The information in this case is, as the counsel for the defendant concedes, substantially in the language of the complaint or deposition, on the back of which the order of commitment is indorsed. It, therefore, follows that, since the said complaint is made a part of the commitment or is by virtue of the language of the order of commitment an essential part thereof, the information sets forth the crime for which the defendant was committed.

It is next contended that the information does not state the offense defined by section 216 of the Penal Code, and that, therefore, it was error to overrule the demurrer thereto. It is further contended, in this connection, that the information is ambiguous and uncertain in that it cannot be ascertained therefrom whether therein it is sought to charge the crime defined by section 216 or that defined by section 217 of the Penal Code.

[3] The attack upon the information on the general ground is based upon the proposition that that pleading fails or omits to state that death was not caused by the alleged act of administering poison to the complaining witness. There can be no doubt that the crime denounced by section 216 would not be committed if death followed from and as a result of the act of administering the poison as indicated by said section, and that the charge, when set up against a person in an indictment or an information, should, to state the offense as accurately as the statute describes it, allege that the act of administering the poison had not or did not cause death. But we think that, notwithstanding the failure to allege that fact, the information here nevertheless sufficiently shows that it was founded on section 216 and that it was not the intention therein to charge the offense of assault with intent to commit murder, as defined by section 217. In charging the last-named offense, it is not requisite to allege that death has not followed the assault as a result thereof. The mere allegation that the assault was made with the intent to kill and murder the assaulted person has always been held sufficient to state the offense, the very language of the accusatory pleading being itself sufficient to show by

necessary implication that death was not produced by the assault. And so in the case of an indictment or an information charging the offense defined by section 216, where there has been an omission to allege that the act of administering the poison did not cause death. The very statement that the poison was administered "with the intent to kill" the person to whom the poison was administered would of necessity imply that death was not caused by or was not the result of the act of administering the poison as so charged. The information here does not specifically charge an assault. It follows the language of section 216, except that it alleges that the poison was administered with the intent to kill *"and murder"* Margery Cockcroft, the words "and murder" not being used in the section. The information could not well or reasonably be construed as attempting to charge the crime of assault with intent to commit murder as defined by section 217, because, as shown, the word "assault" is not therein used. To have stated the crime of assault with intent to commit murder, it would have been necessary to use the word "assault," but unnecessary to use the words "administer a certain poison," unless the act of administering the poison was itself committed in such manner as to have constituted it an assault.

In thus construing the information, we have not been unmindful of the rule that sufficient facts must be directly alleged in a criminal pleading from which it can be determined upon inspecting or examining it that the acts complained of are wrongful and unlawful and that, in construing an indictment or an information, nothing must be left to implication, intendment or conclusion. None but ultimate facts are to be pleaded in such a pleading, a rule which applies to all kinds of pleading, whether criminal or civil, but when ultimate facts are alleged in an indictment or an information from which but one conclusion can follow and which conclusion irresistibly follows from the facts so alleged, it is not in violation of the rule above stated if the conclusion is not expressly or directly alleged. Where the averment in a criminal pleading is that a certain named human being was killed and murdered by the accused, it is not necessary to allege the obvious fact following from such averment that the person so killed and murdered had died as the result of being killed and murdered. As we have

pointed out, where an indictment charges that a person has assaulted another with the intent to kill and murder the latter, the obvious fact follows that death did not follow from said assault as a result thereof. This is the only conclusion that could logically follow from such an averment; hence it is not necessary to allege that the intent to murder was not fully carried out. But, without further discussion or illustration of our position, we feel well justified in concluding that the information in the present case states the offense defined by section 216 of the Penal Code in such manner as to render it reasonably free from the objections urged against it on either the general or special grounds specified in the demurrer.

It is complained that errors were committed by the trial court in its action disallowing challenges of jurors Greiner and Wilcox for cause or implied bias. [4] While an examination of the answers returned by those persons to questions propounded to them on their *voir dire* examination touching their qualifications to serve as jurors in the case has convinced us that the rulings of the court denying the challenges could not be disturbed on the ground that either of the jurors was disqualified to sit in the case by reason of having read about and discussed the case with other persons prior to the date of the trial, still a conclusive reply to the contention that the court erred in the instances named is that, at the time said challenges were interposed, the defendant still had left to him two peremptory challenges, by means of which he could have removed from the jury-box both of the jurors named. The record shows that the defendant used one of the two peremptory challenges on Greiner and retained or accepted Wilcox. It is the settled rule that errors committed in overruling challenges for cause are not grounds of reversal, unless it be shown that an objectionable juror has been forced upon the challenging party after he had exhausted his peremptory challenges. In other words, "if his peremptory challenges remain unexhausted, so that he might have excluded the objectionable juror by that means he has no ground of complaint." (Thompson on Trials, sec. 120; *People* v. *Durrant,* 116 Cal. 196, [48 Pac. 78].) Indeed, the rule has even been extended further than as restricted by Judge Thompson, for, referring to the rule as it has just been stated, the supreme

court, in *People* v. *Schafer,* 161 Cal. 573, 577, [119 Pac. 920, 921], by Chief Justice Angellotti, says: "It is true that in *People* v. *Durrant,* 116 Cal. 196, [48 Pac. 78], the defendant had not exhausted his peremptory challenges when the jury was completed, but the fact that he does exhaust them does not preclude the application of the rule above quoted. The important thing is that it does not appear that an objectionable juror was forced upon the defendant." Here it is not shown that an objectionable juror was forced upon the defendant. Indeed, the contrary is affirmatively made to appear, since he had the opportunity of excusing Wilcox, as he had excused Greiner, but did not take advantage of that opportunity. We must presume, therefore, that Wilcox was perfectly satisfactory to him. At any rate, we cannot, after judgment, presume to the contrary. (*People* v. *Schafer, supra.*)

The contention that the verdict is without sufficient support from the evidence cannot be sustained. There is no necessity for an extended review herein of the evidence to show this. It will suffice to state the facts briefly and in a general way.

In August, 1918, Mrs. Helen Kincaid, mother of the complaining witness, residing in Corning, and another daughter, Helen S. Kincaid, residing in the city of San Francisco, died in Corning, leaving estate, of which she disposed by will, in and by which she left the larger part thereof to Mrs. Cockcroft. Helen S. Kincaid, the other daughter, instituted proceedings in the superior court of Tehama County contesting the probate of the will, and the contest was set down for trial on the sixth day of February, 1918. The ground upon which the probate of the will was thus resisted was that the testatrix was induced to execute the testament through undue influence practiced upon her by her daughter, Mrs. Cockcroft, the complaining witness in this case.

On the fifth day of February, 1918, the defendant appeared at a hotel in Corning. It is not necessary to go into details with regard to his movements from the time he arrived in Corning until the crime charged against him was committed on the day following that of his appearance in said town, evidence as to said movements going only to his identity and his presence in Corning when the alleged of-

fense was committed, and we will, therefore, take up the immediate circumstances of the alleged crime as they were given by Mrs. Cockeroft, who testified for the people as follows, summarizing her testimony: That on the morning of the sixth of February, 1918, the defendant appeared at her residence. She was alone in the house at this time, her husband, engaged in the garage business in Corning, being then at his place of business. The defendant had sounded the doorbell and Mrs. Cockeroft responded, and opening the door, she was confronted and asked by defendant if she was Miss Kincaid, to which she replied that she was now Mrs. Cockeroft. The defendant then stated that he was the fiance of Miss Helen S. Kincaid, Mrs. Cockeroft's sister; that he was one of the latter's attorneys in the will contest and that he had "come to" Corning to talk to her (Mrs. Cockeroft) about the case. The latter at first said that she did not desire to talk about the case, but he was insistent and she then said: "I will talk with you to-morrow," she desiring to arrange to have some other person present at the interview. Defendant replied: "There will be no to-morrow," whereupon Mrs. Cockeroft said: "I will go to the telephone and phone my husband," and he replied: "No, you don't need to." She thereupon started toward the telephone, which was in an adjoining room, and the defendant followed and ran up behind her and placed his hands around her neck, at the same time saying: "Now, I have got you at last." He then placed his handkerchief, saturated with chloroform, over her nose and mouth, and a struggle between them thereupon ensued. The placing of his handkerchief over and about her face did not appear to work as effectually as he desired and he emptied a bottle filled with chloroform on her face. Mrs. Cockeroft tried to call for help while the struggle was in progress, but without result. She was finally rendered unconscious. This struggle, it will be noted, occurred in the front room of the house. When she regained consciousness, which was about an hour after the act of chloroforming was committed, as above explained, she was lying prone upon the floor with a handkerchief over her face, in the kitchen, her head lying near the kitchen stove, which at the time had a very hot fire in it. The chloroform had burned her eyes and face, and she found herself very weak. A short while after re-

covering consciousness, however, she succeeded in gathering
enough strength to go to the telephone and call her hus-
band.   Upon the latter's arrival at his house and his dis-
covery of his wife's condition, he called Dr. Case, a phy-
sician of Corning, who immediately went to the Cockcroft
home and treated Mrs. Cockcroft.   The doctor testified that
when he first saw Mrs. Cockcroft her face bore a deathly
pallor and that she was very weak.   He also testified that
he detected the odor of chloroform on her person.   The
doctor testified that her condition, when he first saw her,
was very serious; that her face was swollen and her heart
beating ''more than one hundred and twenty to the min-
ute.''

The doctor testified that the use of chloroform may be
fatal and that the chances for its being fatal are increased
where one to whom it has been administered is placed near
a stove with a fire in it.

The above is a sufficient statement of the evidence to show
that, so far as the crime charged is concerned, the verdict is
thus so far supported as that this court is precluded from
holding, as a matter of law, that it is not sufficiently but-
tressed by probative facts.   As to the proof of the commis-
sion of the act by the defendant, it is to be remarked that,
in addition to the testimony of Mrs. Cockcroft, who posi-
tively identified the accused as the man who committed the
act, there is the testimony of other witnesses who recognized
or identified the defendant as a person they saw in Corn-
ing at the time the crime was committed, one witness testify-
ing that, in the early morning of the day on which the crime
was committed, he called at her house and inquired whether
she (the witness) knew a Miss Helen Kincaid and where
said Miss Kincaid resided in Corning.   There were many
circumstances proved which strongly tended to show that the
defendant was Mrs. Cockcroft's assailant.

It is lastly contended that the court committed prejudicial
errors in the giving and the disallowance of certain instruc-
tions.   In the brief of counsel for the defendant it is stated
that the court, in one of the instructions (No. 2), took from
the jury the determination of the question whether chloro-
form was a poison.   It is further contended that instruc-
tions Nos. 2 and 9 are contradictory of each other.   The
criticisms of the court's charge in the particulars stated are

without force or merit. The initial portion of instruction No. 2 merely involves a statement of the facts set forth in the information upon which the defendant was tried. [5] By instruction No. 9, the jury were told that "if you are satisfied beyond a reasonable doubt that the defendant did . . . administer chloroform to one Margery Cockcroft by causing her to inhale the same, with the intent to kill said Margery Cockcroft, *and that chloroform is a poison,* then I instruct you that it is your duty to find a verdict of guilty against the defendant." Thus it will be observed that the court directly and in unmistakable language declared to the jury that whether chloroform was a poison was a question for them to determine. But counsel in another particular attacks instruction No. 9 and declares it to be unsound because, as is the claim, the mere causing of one to "inhale" a poison is not to "administer" poison to another, within the meaning of the term "administer" as it is used in section 216. The argument is that the actual entrance of the poison into the stomach must be shown. Some authorities are cited to support this proposition, but we have not taken the pains to examine them. We do not think the point possesses the slightest merit in so far as this case is concerned. There are certain kinds of poison which, of course, must be taken into the stomach to work fatal or serious results. The mere inhalation through the nostrils of strychnine, for instance, would not produce death or any serious derangement of the vital organs of the human body. We know as a matter of very common knowledge that there are narcotics which, through the process of inhalation, will produce sleep or a morbid condition of the nervous system and which, in certain doses, will produce death. From Dr. Case's description of chloroform it is clear that chloroform is such a narcotic, and, therefore, it was not necessary to instruct the jury in this case that they were required to trace the action of the chloroform in its effect upon specific organs of the body or the channels into or through which it was necessary for it to pass to produce unconsciousness or death. If the evidence showed, as it does tend to show, that the choloroform was given to Mrs. Cockcroft in the usual mode of giving that narcotic, then it was "administered" to her by the defendant within the meaning of that word as it is used in the statute.

The complaint that the court erred in refusing to give defendant's requested instruction to the effect that the fact that the accused did not take the witness-stand in his own behalf could not be considered by the jury as a circumstance against him is without just cause. The defendant did not become a witness in the case, and the court, in instruction No. 7, instructed the jury upon that fact substantially in the language of the instruction requested by the defendant but disallowed by the court.

The record discloses no justification for the conclusion that the defendant was not given a fair and legal trial or was not justly convicted.

The judgment and the order are affirmed.

Nicol, P. J., *pro tem.*, and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 30, 1920, and the following opinion then rendered thereon:

THE COURT.—We are not satisfied with the statement of the district court of appeal substantially to the effect that the record does not show that a juror objectionable to defendant was not forced on him. He did exhaust his peremptories, and juror Wilcox remained on the jury. If he had peremptorily excused Wilcox, he could not have excused the last juror peremptorily challenged. But, as is held by the district court of appeal, there was no error in disallowing the challenge for actual bias to juror Wilcox.

The application for a hearing in this court after decision by the district court of appeal of the third appellate district is denied.

All the Justices concurred.