Filed 8/20/21  P. v. Giraldes CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H047471 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 157274) |
| v. | |
| LARRY GIRALDES, JR., | |
| Defendant and Appellant. | |

In the early 1990s, petitioner Larry Giraldes was tried for two murders on various theories, including deliberate and premeditated killing, lying in wait, direct aiding and abetting, and murder as a natural and probable consequence of a conspiracy to distribute drugs.  He was convicted of two counts of first degree murder; those convictions were later reduced to second degree murder.

In 2018, Giraldes sought resentencing under Penal Code section 1170.95 on the theory that his murder convictions were based on a now-invalid theory of natural and probable consequences.[1]  The trial court denied Giraldes's section 1170.95 petition for resentencing for failure to make a prima facie showing of entitlement to relief.  On appeal, Giraldes contends, and the Attorney General concedes, that the trial court engaged in improper factfinding and should have issued an order to show cause and held an evidentiary hearing on the merits of the petition.  The Santa Clara County District Attorney, as amicus curiae, contends that the trial court properly denied the petition, both

_____

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

because of pleading deficiencies and because there is substantial evidence supporting a still-valid theory of murder. In response to our requests for supplemental briefing, the Attorney General agreed with the District Attorney that the petition contains pleading deficiencies.

We conclude that Giraldes failed to plead facts that, if true, would entitle him to relief. Because Giraldes failed to satisfy the section 1170.95 pleading burden, the trial court did not err in denying his petition. However, we modify the order to provide that the denial is without prejudice to the filing of a new petition. As so modified, we affirm.

## I.   BACKGROUND

### A.   *Factual Summary*[2]

In 1991, Guillermo Chavez ran a drug ring that sold high grade cocaine. Alexander Fry and Peter Jouron worked for Chavez, distributing cocaine and collecting drug debts. Giraldes sold drugs for Chavez. Willie Lee Shackelford acted as a runner for Giraldes. Shackelford also worked at a used car dealership partly owned by Kourosh Saghafian. Giraldes lived with brothers Rosario and Michael Grasso. Saghafian and the Grasso brothers were among Chavez's customers.

Tension developed between Chavez and Fry and Jouron, in part because Chavez suspected that Fry and Jouron were diluting his cocaine. In October 1991, Chavez told his brother and another man that Fry and Jouron were planning to kill him and that he was going to kill them first.

Giraldes disliked Fry and Jouron and told Saghafian he wanted to get rid of them. Giraldes also told Saghafian that he was going to put mercury in Jouron's drink.

---

[2] We take the facts from our prior opinion in *People v. Giraldes, et al.* (June 22, 1995, H011038) [nonpub. opn.], (case No. H011038), where they are set forth more fully. On our own motion, we take judicial notice of that prior opinion. (Evid. Code, §§ 452, subd. (d), 459.) We also take judicial notice of the record in Giraldes's prior appeal (case No. H011038), as requested by the District Attorney. (Evid. Code, §§ 452, subd. (d), 459.)

In October 1991, Jouron, Giraldes, the Grasso brothers, and others stole a large collection of guns. Jouron and Fry delivered most of the stolen guns to Chavez on the evening of October 12.

On October 13, Giraldes, Shackelford, and the Grasso brothers removed guns from a friend's residence.

At approximately 7:35 p.m. that night, San Jose police responded to reports of gunshots in the area of Alum Rock Park in San Jose. There, the police found Fry and Jouron shot to death in Fry's pickup truck. Fry had suffered gunshot wounds from a .12-gauge shotgun and a 9-millimeter firearm. Jouron had two gunshot wounds, including one to the head, from a .45-caliber firearm as well as a gunshot wound from a 9-millimeter firearm.

Early the following morning, Giraldes, Shackelford, and Rosario Grasso went to the home of John DeRose. Giraldes and Shackelford said they had "just killed" Fry and Jouron; Giraldes said they killed the victims because it was "better them than us." Shackelford said that he drove, Rosario Grasso used one gun, and Michael Grasso used the other gun. Rosario Grasso said that he shot Jouron in the head. Shackelford later told Saghafian that Michael Grasso had shot Fry in the head with a shotgun and that Rosario Grasso had killed Jouron.

At trial, Giraldes testified that he witnessed the Grasso brothers shoot the victims.

### B.      *Procedural History*

Giraldes and Shackelford were tried jointly for the murders of Fry and Jouron. The jury was instructed on various theories of guilt for the murders, namely: deliberate and premeditated killing, lying in wait, direct aiding and abetting, and murder as a natural and probable consequence of a conspiracy to distribute drugs. Both Giraldes and Shackelford were convicted of two counts of first degree murder. Giraldes also was convicted of burglary, illegal possession of a gun by a felon, and conspiracy to escape by force and violence. The trial court sentenced Giraldes to two consecutive indeterminate

terms of 25 years to life and to a determinate term of 12 years 4 months. This court affirmed Giraldes and Shackelford's convictions in an opinion issued on June 22, 1995.

In 2014, the California Supreme Court held in *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), superseded by statute as stated in *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103, that a defendant cannot be convicted of first degree premeditated murder under the natural and probable consequences doctrine. On May 18, 2015, Giraldes filed a petition for writ of habeas corpus based on *Chiu*. The superior court granted that petition in 2016, noting that it was not possible to determine whether the jury had convicted Giraldes of first degree murder based on a valid theory, such as direct aiding and abetting, or the now invalid natural and probable consequences theory. The superior court reduced Giraldes's convictions to second degree murder and resentenced him to consecutive indeterminate terms of 15 years to life on those convictions.

In December 2018, Giraldes filed a petition for writ of habeas corpus seeking to have his murder convictions vacated pursuant to recently enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437). In it, Giraldes asserted that he "was convicted on the now invalid natural and probable consequences doctrine . . . ."

With the assistance of counsel, Giraldes later filed what was styled as a supplemental petition for resentencing under section 1170.95. In support of that supplemental petition, Giraldes declared that he is "eligible for relief under section 1170.95 because an information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and [probable] consequences doctrine; he was convicted by jury of first degree murder, which was later reduced to a conviction of second degree murder; and he could not be convicted of first or second degree murder because of changes to . . . sections 188 or 189 made effective January 1, 2019." The supplemental petition incorporated by reference the habeas petition.

4

The prosecutor opposed the petition, arguing that Giraldes is ineligible for section 1170.95 relief because he is not someone who "could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(3).) The prosecutor asserted that the record of conviction contains substantial evidence supporting Giraldes's murder convictions on a direct aiding and abetting theory (as evidenced by the fact that the jury was instructed on that theory) and that the existence of such evidence means he cannot make the prima facie showing required by section 1170.95, subdivision (a)(3).[3] The prosecutor also argued that a section 1170.95 petitioner is required to "prove his or her eligibility with independent and objective evidence, rather than by merely alleging that he or she falls within the provisions of . . . section 1170.95(a)(1-3)."

At a hearing on Giraldes's petition, the trial court opined that Giraldes had made a prima facie showing that "a complaint was filed charging [him] with murder which could be prosecuted under a theory of natural and probable consequences or one of the now questioned forms of felony murder" (§ 1170.95, subd. (a)(1)) and that he "was convicted of murder on that charging document" (§ 1170.95., subd. (a)(2)). The court expressed the view that Giraldes had not set forth sufficient facts to make a prima facie showing that he could not be convicted of first or second degree murder because of changes to section 188 or 189 (§ 1170.95, subd. (a)(3)) because he did not allege facts showing that "he could not be convicted under a theory of aiding and abetting with express malice." In the court's view, Giraldes needed to allege facts showing he could not be convicted under any of the theories of liability on which the jury was instructed at his trial. The court permitted Giraldes to amend his petition.

---

[3] The prosecutor also argued below that Senate Bill 1437 is unconstitutional. This and other courts of appeal have since held that Senate Bill 1437 passes constitutional muster. (See, e.g., *People v. Alaybue* (2020) 51 Cal.App.5th 207; *People v. Bucio* (2020) 48 Cal.App.5th 300, 311-312; *People v. Superior Court* (*Ferraro*) (2020) 51 Cal.App.5th 896.) This issue is not raised on appeal.

5

Giraldes filed a second supplemental petition. In it, he alleged what he had previously declared—that "an information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and [probable] consequences doctrine which was reflected in the instructions; he was convicted by jury of first degree murder, which was later reduced to a conviction of second degree murder; and he could not be convicted of first or second degree murder because of changes to . . . sections 188 or 189 made effective January 1, 2019." In an accompanying brief, Giraldes argued—based on the evidence presented at his trial—that he could not be convicted of murder under any theory but the now-invalid natural and probable consequences theory. Specifically, he argued that he could not be convicted as the actual killer because the witnesses who implicated him as a shooter had credibility problems and because there was "evidence show[ing] Chavez and others working for him were present and could have been the gunman." We understand this argument to be that there was reasonable doubt at his trial as to whether he could have been one of the killers. He further argued that he could not be convicted as a direct aider and abettor with intent to kill because, "[w]hile a few witnesses with serious credibility problems said petitioner expressed a plan or desire to kill Fry and Jouron, the weight of the evidence showed it was Chavez who had the motive to kill them and planned it without petitioner being present."

The trial court denied the petition without issuing an order to show cause. The court noted that while Giraldes had both alleged and declared that he "could not be convicted of first or second degree murder because of changes to . . . sections 188 or 189 made effective January 1, 2019," he had "set[] forth no facts . . . in support of that assertion." The court concluded that there was substantial evidence in the record to support murder convictions under a direct aiding and abetting theory; that such evidence means Giraldes *could* be convicted of first or second degree murder despite the recent

6

changes to changes to section 188 or 189; and that, accordingly, he is ineligible for resentencing.

Giraldes timely appealed.

## II.    DISCUSSION

On appeal, Giraldes maintains that the trial court engaged in impermissible factfinding in concluding that he failed to make a prima facie showing of entitlement to section 1170.95 relief.  The Attorney General concurs with that argument in his respondent's brief.  The Santa Clara District Attorney, as amicus, argues that the petition was properly denied for two independent reasons:  the petition was inadequately pleaded and the existence of substantial evidence of direct aiding and abetting liability makes Giraldes ineligible for section 1170.95 relief.

### A.    *Legal Principles—Senate Bill 1437 and Section 1170.95*

Prior to the enactment of Senate Bill 1437, "an aider and abettor [was not required to] personally possess malice, express or implied, to be convicted of second degree murder under a natural and probable consequences theory." (*People v. Gentile* (2020) 10 Cal.5th 830, 847 (*Gentile*).)  Indeed, " 'the mens rea of the aider and abettor with respect to [the nontarget] offense [was] irrelevant [because] culpability [was] imposed simply because a reasonable person could have foreseen the commission of the nontarget crime.' [Citation.]" (*Chiu*, *supra*, 59 Cal.4th at p. 164)

Senate Bill 1437 amended section 188 to provide that, outside the context of felony murder, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015 § 2.)  "The natural and probable consequences doctrine is incompatible with this requirement . . . ." (*Gentile*, *supra*, 10 Cal.5th at p. 847.)  Accordingly, our Supreme Court has concluded that "Senate Bill 1437 eliminates natural and probable consequences liability for murder regardless of degree." (*Id.* at pp. 847-848.)

7

Senate Bill 1437 also enacted section 1170.95, subdivision (a), which provides: "A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:  [¶]  (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶]  (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.  [¶]  (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019."  (Stats. 2018, ch. 1015 § 4.)

The petition is required to include:  "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a).  [¶]  (B) The superior court case number and year of the petitioner's conviction.  [And] [¶]  (C) [w]hether the petitioner requests the appointment of counsel."  (§ 1170.95, subd. (b)(1).)  "[U]pon the filing of a facially sufficient petition," the statute "requir[es] that counsel be appointed."  (*People v. Lewis* (2021) 11 Cal.5th 952, 970 (*Lewis*).)

"[T]hen the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief.  (§ 1170.95, subd. (c).)"  (*Lewis*, *supra*, 11 Cal.5th at p. 960.)  Our Supreme Court recently held that section 1170.95, subdivision (c) "describ[es] only a single prima facie showing" (*Lewis*, *supra*, at p. 962) and that "a trial court can rely on the record of conviction in determining whether that single prima facie showing is made."  (*Id*. at p. 970.)  "[T]he prima facie inquiry under subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment

8

regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citations.]" (*Id*. at p. 971; see *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*), overruled on other grounds as stated in *Lewis* ["the trial court should assume all facts stated in the section 1170.95 petition are true" unless they are "untrue as a matter of law" or refuted by the record and may not engage in "factfinding involving the weighing of evidence or the exercise of discretion"].)  "If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95[, subdivision] (a), then the trial court should issue an order to show cause." (*Drayton*, *supra*, at 980.)

The legal sufficiency of a pleading is a legal question subject to de novo review.  (See *People v. Perlas* (2020) 47 Cal.App.5th 826, 832 [a demurrer to an accusatory pleading challenges the sufficiency of the pleading and raises an issue of law that is reviewed demurrer de novo].)  We likewise review questions of statutory interpretation de novo.  (*People v. Prunty* (2015) 62 Cal.4th 59, 71.)

### B.      *Giraldes Failed to Meet His Section 1170.95 Pleading Burden*

As noted above, the District Attorney maintains the petition was properly denied because Giraldes failed to meet his pleading burden.  Specifically, the District Attorney argues Giraldes merely declared his eligibility without alleging facts supporting that conclusion.  We requested that the parties file supplemental briefs addressing whether Giraldes satisfied his section 1170.95 pleading burden.[4]

---

[4] The trial court did not deny the petition based on pleading deficiencies. However, the issue was adequately preserved for appellate review.  At oral argument

Giraldes responds that it is sufficient for a petition merely to parrot the requirements set forth in section 1170.95, subdivision (a) without supporting factual allegations. Giraldes further argues that, even if he was required to allege facts, he satisfied that burden because his second supplemental petition "explained, in detail, and with copious reference both to the trial record and to relevant statutory and case law, why he could not be convicted" of murder under any currently viable theory. He asserts that while the "factual recitations [in the second supplemental petition] are couched in terms of legal arguments rather than as express factual allegations, undeniably implicit in these arguments are that appellant was not the actual killer; he did not with intent to kill aid and abet the actual killers; and he neither was a major participant in the underlying felony nor acted with reckless indifference to human life."

The Attorney General responds that Giraldes failed to allege "facts to support his claim that he could not now be convicted of second degree murder under a still viable theory, [such that he] failed to sustain his burden of making a prima facie showing of eligibility for relief under section 1170.95."

### 1. *Legal Principles—Pleading Requirements*

At the prima facie stage, the trial court accepts as true all facts stated in the section 1170.95 petition, so long as they are not untrue as a matter of law or disproved by the record. (*Drayton*, *supra*, 47 Cal.App.5th at p. 980; *Lewis*, *supra*, 11 Cal.5th at p. 971.) Generally, legal conclusions are insufficient to satisfy a pleading burden. (See *People v. Duvall* (1995) 9 Cal.4th 464, 474 (*Duvall*) ["To satisfy the initial burden of pleading adequate grounds for [habeas] relief, . . . '[c]onclusory allegations made

below, the court questioned whether Giraldes had "set forth enough facts . . . to show that he could not be convicted now, because 188 and 189 have been changed." After some discussion with Giraldes's counsel, the court offered to permit Giraldes to amend his petition to make the requisite allegations. Thereafter, Giraldes filed his second supplemental petition. We have an obligation to address the pleading issue given that " 'we review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm.' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 351, fn. 11.)

10

without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing.' "]; *Burke v. Superior Court of Sacramento County* (1969) 71 Cal.2d 276, 279, fn. 4 ["the general rule [is] that a complaint must contain only allegations of ultimate facts as opposed to allegations of evidentiary facts or of legal conclusions or arguments"].) Instead, the "rule which applies to all kinds of pleading, whether criminal or civil," is that " ultimate facts are to be pleaded . . . ." (*People v. Tinnen* (1920) 49 Cal.App. 18, 23 [addressing adequacy of allegations in an information]; *People v. Green* (1924) 65 Cal.App. 234, 235-236 ["It is ordinarily sufficient to charge an offense in the language of the statute if the latter defines it or describes the acts constituting the offense . . . . [¶] [An] information [that] charges in the language of the statute . . . charges ultimate facts"]; *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 872 ["To survive a demurrer, the complaint need only allege facts sufficient to state a cause of action; each evidentiary fact that might eventually form part of the plaintiff's proof need not be alleged"].) Ultimate facts are the elements of a crime and the elements of certain defenses, the existence of which is determined by the trier of fact from the existence of one or more evidentiary facts. (*People v. Thompson* (1980) 27 Cal.3d 303, 315, fn. 13, disapproved of on other grounds as stated in *People v. Scott* (2011) 52 Cal.4th 452, 470-471; *People v. McCall* (2004) 32 Cal.4th 175, 182.)

Our colleagues in Division Two of the Second District Court of Appeal recently applied these principles to a section 1170.95 petition, holding that a petitioner fails to make the requisite prima facie showing of eligibility for relief where his or her petition alleges legal conclusions as opposed to facts. (*People v. Nunez* (2020) 57 Cal.App.5th 78, 89 (*Nunez*), review granted Jan. 13, 2021, S265918.)[5] In compliance with the general rule governing pleadings in California, a section 1170.95 petition must allege ultimate facts that, if true, show entitlement to relief.

---

[5] The Supreme Court has deferred further action in *Nunez* pending its decision in *Lewis*.

11

## 2.    *Analysis*

Section 1170.95 sets forth three conditions that must be satisfied by a petitioner seeking relief:  "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶]  (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.  [¶]  (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019."
(§ 1170.95, subd. (a).)

Giraldes alleged that "an information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and [probable] consequences doctrine which was reflected in the instructions; he was convicted by jury of first degree murder, which was later reduced to a conviction of second degree murder"; he "was convicted on the now invalid natural and probable consequences doctrine"; "and he could not be convicted of first or second degree murder because of changes to . . . sections 188 or 189 made effective January 1, 2019."  The first three allegations—those regarding the charging document and conviction—are factual and satisfy the first two pleading requirements.[6]  (§ 1170.95, subds. (a)(1)-(2), (b)(1)(A).)  The final allegation—that "he could not be convicted of first or second degree murder because of changes to  . . . sections 188 or 189 made effective January 1, 2019"—is a legal conclusion.  (*Nunez, supra*, 57 Cal.App.5th at pp. 88-89, review granted [describing

---

[6] The Attorney General mistakenly states that Giraldes "failed to specifically declare that he 'was convicted of 2nd degree murder under the natural and probable consequences doctrine or under the 2nd degree felony murder doctrine[.]' "  That allegation appeared in Giraldes's original petition, which was incorporated by reference in his supplemental petitions.

12

assertion 'that petitioner 'could not now be convicted of 1st or 2nd degree murder because of changes made to . . . [sections] 188 and 189' " as a "legal conclusion"].)

Giraldes alleges no facts to support that legal conclusion. For example, he does not allege that he was "not the actual killer"; that he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree"; that he "was not a major participant in the felony **or** . . . did not act with reckless indifference to human life during the course of the crime or felony"; or that "[t]he victim was **not** a peace officer in the performance of his or her duties."[7] Instead, in support of his second supplemental petition, Giraldes advanced *legal arguments* as to why a jury could not convict him of murder as the actual killer or a direct aider and abettor based on the evidence presented at trial and inferences drawn therefrom. He argues in his supplemental brief that those arguments satisfy his pleading requirement. They do not for three reasons. First, legal arguments, of course, are not facts. In the absence of factual allegations, the trial court cannot assess the prima facie showing in the manner prescribed in *Lewis*—that is, take the factual allegations stated in the section 1170.95 petition as true and determine whether, if true, the petitioner would be entitled to relief. (*Lewis*, *supra*, 11 Cal.5th at pp. 970-971.) Second, on a section 1170.95 petition, the question is not whether the People proved petitioner's guilt of murder on a still-valid legal theory at trial. The question is whether the People could do so based not only on the record of conviction but on new or additional evidence. (§ 1170.95, subd. (d)(3).) Third, Giraldes's arguments urged the trial court to make credibility determinations and weigh the trial evidence. For example, he argued that he could not be convicted as a direct aider and abettor with intent to kill because the witnesses that testified that he had expressed a desire to kill the victims had "serious

[7] These factual allegations appear on the pre-printed form petition commonly used by section 1170.95 petitioners and are sufficient to satisfy the section 1170.95 pleading burden.

13

credibility problems" and "the weight of the evidence showed it was Chavez who had the motive to kill them and planned it without petitioner being present." The sort of evaluation and weighing of the evidence that Giraldes invited the trial court to engage in is precisely what this court held to be impermissible at the prima facie stage in *Drayton*. (*Drayton*, *supra*, 47 Cal.5th at p. 982.)

For all the foregoing reasons, we conclude that Giraldes failed to meet his section 1170.95 pleading burden. Accordingly, the trial court did not err in denying the petition.

That said, numerous considerations convince us that, on remand, Giraldes may file an amended petition. First, California courts have long adhered to the "policy that cases should be tried on their merits rather than dismissed for technical defects in pleading." (*Bloniarz v. Roloson* (1969) 70 Cal.2d 143, 149; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [noting the strength of the policy that "seeks to dispose of litigation on the merits rather than on procedural grounds"].) In furtherance of that policy, "liberal interpretation and amendment of pleadings is strongly favored . . . ." (*Dieckmann v. Superior Court* (1985) 175 Cal.App.3d 345, 352; *Herrera v. Superior Court* (1984) 158 Cal.App.3d 255, 259 [" 'Great liberality is indulged in matters of amendment to the end that lawsuits may be determined upon their merits' "].) These " 'principles apply in the criminal context' " as well. (*People v. Huerta* (2016) 3 Cal.App.5th 539, 544 [stating, in dicta, that liberal amendment principles apply to Proposition 47 petitions].) For example, in a habeas corpus proceeding, "a court issuing an OSC retains the discretion to grant a party leave to amend" to cure "technical irregularities in the pleadings," and [r]etention of this power is necessary to ensure that technical and inadvertent pleading errors do not lead to premature dismissals that would frustrate the ends of justice or require holding unnecessary evidentiary hearings that would squander scarce judicial resources." (*Duvall*, *supra*, 9 Cal.4th at p. 482.)

14

Second, section 1170.95 expressly contemplates the denial of petitions containing pleading defects without prejudice to the filing of another petition. Specifically, subdivision (b)(2) permits the superior court to deny a petition without prejudice to the filing of another petition if the petition fails to include any of the following: "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b).)

Third, no court had addressed the section 1170.95 pleading requirements at the time Giraldes filed his petitions. Therefore, he "is entitled to an opportunity to file a new petition meeting the statutory requirements" as we have now articulated them. (*People v. Page* (2017) 3 Cal.5th 1175, 1189 [Proposition 47 petitioner entitled to file a new petition where "the proper allocation of the burden of proof and the facts necessary to resentencing on a Vehicle Code section 10851 conviction were not set out expressly in the text of Proposition 47, and . . . had yet [to be] judicially articulated when defendant submitted his petition for recall"].) Accordingly, we shall modify the order denying Giraldes's petition to provide that the denial is without prejudice to the filing of a new petition.

### C.     *Section 1170.95 Does Not Import the Substantial Evidence Standard*

The trial court denied the petition based on an erroneous reading of section 1170.95 that the District Attorney endorses in his amicus brief. We explain the flaw in the court's approach in an effort to provide guidance for any further proceedings in this matter.

The trial court reasoned that Giraldes cannot satisfy the third condition for section 1170.95 relief—that is, he is not a person who "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective

15

January 1, 2019" (§ 1170.95, subd. (a)(3))—because there is substantial evidence in the record of conviction to support his murder convictions on a theory of direct aiding and abetting. In other words, the trial court applied the substantial evidence standard to determine whether Giraldes had met his prima facie burden. Under the trial court's approach, a section 1170.95 petition fails where substantial evidence exists in the record of conviction supporting a hypothetical finding that the petitioner is guilty of murder under a currently valid theory. The finding is hypothetical because, as the trial court itself acknowledged in the context of Giraldes's *Chiu*-based habeas, there is no way of knowing the theory on which the jury based its verdicts.

The trial court's reading of section 1170.95, subdivision (a)(3) finds support in *People v. Garcia* (2020) 57 Cal.App.5th 100, 115, review granted February 10, 2021, S265692, which concluded that the petition at issue failed to make the requisite prima facie showing because "substantial evidence support[ed] a murder conviction based on a direct aiding and abetting theory . . . ." *Garcia* relied on *People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted January 13, 2021, S265309, which held that—at the evidentiary hearing phase—"the prosecution must . . . prove beyond a reasonable doubt that the defendant *could* still have been convicted of murder under the new law—in other words, that a reasonable jury could find the defendant guilty of murder with the requisite mental state for that degree of murder. This is essentially identical to the standard of substantial evidence . . . ."

However, this court disagreed with the view that the Legislature imported the substantial evidence standard into section 1170.95, subdivision (a)(3) in our decision in *People v. Lopez* (2020) 56 Cal.App.5th 936, review granted February 10, 2021, S265974. Like *Duke*, *Lopez* addressed the prosecutor's burden at the evidentiary hearing stage. We held that the prosecutor bears the burden to prove beyond a reasonable doubt the elements of first or second degree murder under the current law. (*Id.* at p. 951.)

16

Division 7 of the Second District Court of Appeal reached the same conclusion in *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 230-231, review granted March 10, 2021, S266652. *Rodriguez* reasoned that the Legislature's goal in enacting Senate Bill 1437—to "reform[ ] aider and abettor liability in homicide cases to more equitably sentence both past and future offenders in relation to their own actions and subjective mentes reae"—"is best effectuated by resentencing individuals convicted of first or second degree murder under the natural and probable consequences doctrine or the felony murder rule if the evidence, whether from the record of conviction alone or with new and additional evidence introduced at the subdivision (d)(3) hearing, fails to establish beyond a reasonable doubt they, in fact, acted during the crime with the now-required mental state. To deny resentencing simply because a jury could have found that they may have acted with express malice would frustrate the legislation's purpose." (*Rodriguez*, *supra*, at pp. 240-241.) *Rodriguez* further reasoned that it "is unlikely the Legislature would have" required the prosecutor to prove ineligibility beyond a reasonable doubt (as section 1170.95, subdivision (d)(3) does) "if it had intended only an appellate-type review of the sufficiency of the evidence of the petitioner's guilt on a still-viable theory, rather than requiring the prosecutor to actually establish the petitioner's guilt under the newly amended statutes." (*Rodriguez*, *supra*, at p. 242.) Moreover, *Rodriguez* noted "[t]he improbability of such a legislative intent [in view of] subdivision (d)(3)'s provision authorizing both parties to introduce new or additional evidence at the hearing to determine whether the petitioner is ineligible for resentencing." (*Ibid*.)

*People v. Duchine* (2021) 60 Cal.App.5th 798 likewise rejected *Garcia* and *Duke*'s reading of section 1170.95, subdivision (a)(3) as prescribing a substantial evidence standard of review. *Duchine*, like this case, concerned the petitioner's burden at the prima facie stage. *Duchine* reasoned that "[t]he standard adopted by *Garcia*, in which the trial court focuses on the state of the existing record and applies an appellate review substantial evidence standard, makes little sense in th[e] context" of section 1170.95,

17

which allows for the introduction of new or additional evidence. (*Duchine*, *supra*, at p. 813.) *Duchine* further explained that "[t]he interpretation adopted by *Garcia* would mean the prosecution's burden would be to prove 'beyond a reasonable doubt' that 'substantial evidence' exists, which by itself borders on incomprehensible. The court would then employ these two widely divergent standards in a combined (and backwards) fashion to determine, as *Garcia* suggests, whether a jury *hypothetically could have found* a defendant guilty under a permissible theory had it addressed the issue. In short, the idea that the prosecution must prove beyond a reasonable doubt that there is substantial evidence in a prior record to support a hypothetical finding of guilt on a theory of murder that may never have been presented to a jury is beyond that border." (*Id*. at p. 814.)

We find *Duchine* and *Rodriguez* to be persuasive and adhere to the statutory interpretation set forth in *Lopez.* Therefore, we conclude that it is error for a trial court to apply a substantial evidence standard in assessing whether petitioner met his burden at the prima facie stage. (Cf. *Lewis*, *supra*, 11 Cal.5th at p. 971 [stating that "the prima facie inquiry . . . is limited" and that the trial court " ' "takes petitioner's factual allegations as true" ' " unless refuted by the record of conviction].)

## III. DISPOSITION

The order denying Giraldes's petition is modified to provide that the denial is without prejudice to the filing of a new petition. The order is affirmed as so modified.

18

_____

ELIA, ACTING P.J.

WE CONCUR:


_____

BAMATTRE-MANOUKIAN, J.



_____

DANNER, J.




*People v. Giraldes*
H047471