Filed 11/17/21  P. v. Soto CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H047919 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. F17281) |
| v. | |
| JUAN LORENZO SOTO, | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

In 2009, a jury convicted defendant Juan Lorenzo Soto of first degree murder (Pen. Code, § 187, subd. (a)),[1] conspiracy to commit robbery (§ 182, subd. (a)(1)), five counts of second degree robbery (§ 211), and two counts of attempted second degree robbery (§§ 664, 211), and found firearm and gang allegations true (§§ 12022.53, subds. (b), (d), 186.22, subd. (b)(1)).  The superior court sentenced defendant to 34 years consecutive to 50 years to life.

In 2019, defendant filed a petition for resentencing pursuant to section 1170.95, which allows individuals convicted of felony murder or murder under the natural and probable consequences doctrine to petition the superior court to vacate the conviction under recent changes to homicide law.  After briefing and argument by the parties, the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

superior court denied the petition, determining that defendant was "unable to establish that he could not now be convicted of first-degree murder."

Defendant contends that the superior court erred when it denied the petition. Defendant argues that the superior court improperly decided disputed issues of fact instead of assuming the facts alleged in the petition were true unless refuted by the record of conviction. The Attorney General concedes that defendant stated a prima facie case for section 1170.95 relief and that the matter should be remanded for the issuance of an order to show cause and an evidentiary hearing.[2]

For reasons that we will explain, we conclude that defendant stated a prima facie case of entitlement to relief under section 1170.95. We will therefore reverse the superior court's order and remand the matter for the issuance of an order to show cause and an evidentiary hearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND[3]

### A. *Factual Background*[4]

On the morning of July 25, 2004, defendant, Francisco Javier Valenciano, Jr., and Anthony Gonzales drove from Watsonville to Santa Cruz to commit a robbery. They were armed with a shotgun and a pistol. The liquor store they intended to rob was too busy, so they decided to rob a group of seven men they had seen playing cards in a

---

[2] Defendant also initially contended that double jeopardy principles bar the district attorney from "us[ing] . . . the procedures set forth in section 1170.95 . . . to determine whether defendant's conviction for murder should remain as part of his original sentence" because the trial court dismissed a felony-murder special circumstance allegation at the district attorney's request during trial. Defendant further contended that he had a constitutional right to be present at all of the section 1170.95 proceedings. Defendant has abandoned these claims based on the Attorney General's concession that the trial court erred because defendant stated a prima facie case for section 1170.95 relief.

[3] The Attorney General requests that we take judicial notice of the proceedings and opinion in case No. H034605. We hereby grant that request. (Evid. Code, §§ 450, 452.)

[4] The factual background is a summary of the facts stated in this court's opinion in case No. H034605.

nearby driveway with a pile of money on the ground. When Gonzales, armed with the shotgun, and defendant, armed with the pistol, approached the card players and directed them to hand over their money, all but one of them, Rodolfo Escobar, complied.[5] Escobar instead insulted Gonzales and picked up the money. As one of Escobar's friends implored him to cooperate with the gunmen, Escobar said he had to work hard for his money to support his family and that if Gonzales wanted the money, he should "ask [his] mama for [it]." Gonzales pressed the shotgun against Escobar's forehead and pulled the trigger, blowing off the top of his head. Gonzales and defendant collected the money, went back to the car, where Valenciano had been acting as a lookout, and drove off.

A gang expert opined that defendant, Valenciano, and Gonzales were members of the Varrio Green Valley (VGV), a Norteño subset in Watsonville. When asked a hypothetical question involving the facts of the incident, the expert opined that the offenses were gang-related.

Defendant testified at trial. Defendant stated that Gonzales had dropped him off at a church on the morning of July 25, 2004. After about 20 minutes, Gonzales suddenly came up to defendant on foot and asked if defendant could give him a ride "like right now." Defendant realized that Gonzales needed to get rid of the car. He did not ask questions because he did not want to be involved. From that day to the date of his arrest, defendant never asked Gonzales what he had been doing that morning.

Defendant admitted that he was a VGV member. He testified that he claimed VGV only because he lived in the Green Valley Apartments. He denied paying gang taxes, being obligated to fellow gang members, or having enemies among rival Sureño gangs. When asked about his various tattoos, Soto denied they had any gang-related

---

[5] At least one victim testified that he tried to move away when he was told to put his money on the ground, but a man holding a revolver told him to "Go and put all your money down."

3

meaning. He also denied ever being jumped into a gang, having any relatives who were gang members, or participating in any gang activity while incarcerated.

## B. *Procedural History*

### 1. Charges, Verdicts, Sentence, and Direct Appeal

Defendant was charged with conspiracy to commit robbery (§ 182, subd. (a)(1), count 1); first degree murder (§ 187, subd. (a), count 2); five counts of second degree robbery (§ 211, counts 3-7); and two counts of attempted second degree robbery (§§ 664, 211, counts 8 & 9). It was alleged that counts 2 through 9 were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), that a principal personally discharged a firearm causing death in the commission of counts 2 and 3 (§ 12022.53, subds. (d), (e)(1)), that a principal personally used a firearm in the commission of counts 4 through 9 (*id*., subds. (b), (e)), and that defendant had two prior strike convictions (§ 667, subds. (b) - (i)).

In 2009, a jury found defendant guilty of all counts and found true the gang and firearm allegations. Defendant stipulated to a court trial on the strike allegations. The trial court granted defendant's subsequent motion to strike the two prior strikes and denied his motion for a new trial. The court sentenced defendant to a determinate term of 34 years consecutive to 50 years to life.

This court affirmed defendant's convictions in a 2012 unpublished decision.

### 2. Trial Court Proceedings on Section 1170.95 Petition for Resentencing

In 2019, defendant filed a petition for resentencing pursuant to section 1170.95. The petition consisted of a three-page preprinted form, two pages of which were a declaration defendant signed under penalty of perjury. Among other boxes, defendant checked boxes on the form declaring that "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; "[a]t trial, [he]

4

was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine"; and he "could not now be convicted of 1st or 2nd degree murder because of changes made to . . . §§ 188 and 189, effective January 1, 2019." In addition, defendant checked boxes declaring that he "was not the actual killer"; he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree"; he "was not a major participant in the felony **or** . . . did not act with reckless indifference to human life during the course of the crime or felony"; and the victim was not a peace officer.

The superior court appointed counsel to represent defendant, and the parties filed multiple rounds of briefing.

In opposition to the petition, the district attorney asserted that defendant had failed to state a prima facie case for relief because he "simply checked some boxes on a form . . . and does not explain . . . how he could not now be convicted of felony murder" under current law. The district attorney argued that defendant had "an obligation . . . to show eligibility and . . . to cite to some facts or present some evidence to support [his] claim." Summarizing the evidence presented at trial, the district attorney also contended that even if defendant had stated a prima facie case, the record of conviction demonstrates that defendant was a major participant in the underlying robbery who acted with reckless indifference to human life. The district attorney argued that "[m]uch like robbing a known, violent drug dealer, three men robbing a group of seven men is logically an act that would increase the risk to human life relative to other armed robberies," and that the facts demonstrated there was "an opportunity for [defendant] to mitigate a violent armed robbery that was spiraling out of control, but [he] did nothing." The district attorney observed that defendant and his coparticipants "scoped out" the men; defendant provided the car for the robbery; and, after the shooting, defendant "did not stop to help the victim and instead gathered up the money on the ground and fled with

5

his cohorts. [Defendant] actively participated in the coverup that day, and then . . . went to [a] barbeque."

In reply, defendant asserted that the issue before the superior court was whether he was a major participant in the underlying robbery who acted with reckless indifference to human life. After summarizing the evidence presented at trial, defendant argued that this "is not a situation . . . where there is evidence that [he] was in a position just before the shooting to observe anything in [Gonzales's] actions . . . that would have indicated that [Gonzales] was likely to engage in lethal violence at that time, and that [he] realistically had time to intervene and prevent the killing. It appears that the shooting in this case occurred only seconds after [Escobar] resisted [Gonzales's] attempts . . . to take and carry away [his] money. Nor is there any evidence that once . . . Gonzales did the shooting, . . . [he] could have done anything at that point." Defendant further argued that "there is no evidence from which it reasonably can be inferred that he harbored a willingness to kill, or to assist a confederate in killing, to achieve the goal of robbing someone, or that he anticipated the potential for loss of human life beyond that usually accompanying an armed robbery. This is not reckless enough to support a finding that [he] was a major participant in the killing who was acting with reckless indifference to human life. In other words, there appears to be nothing in the plan that one can point to that elevated the risk to human life beyond those risks inherent in any armed robbery." Defendant observed that the jury was not asked to determine whether he was a major participant in the underlying felony who acted with reckless indifference to human life and that his murder liability had been predicated on the now invalid natural and probable consequences doctrine.[6]

---

[6] Defendant also filed a supplemental points and authorities in support of his petition where he raised credibility issues with several of the prosecution witnesses and discussed the DNA results.

6

At a hearing on whether defendant established a prima facie case for relief, defendant asserted that an evidentiary hearing was required to determine whether he could be convicted under the new theory that he was a major participant who acted with reckless indifference to human life. Distinguishing cases cited by the district attorney that pertained to the defendants' failure to render aid to the victims, defendant argued that this was not a situation where he could have rendered aid because there was nothing anyone could have done after Escobar was shot in the head.

The superior court stated that defendant had an opportunity to intervene before the shooting and that "while all this is occurring, [defendant] is using his own revolver . . . to direct other victims back into the kill zone, basically." Defendant countered that "all the evidence shows [the shooting] was a spur of the moment" decision by Gonzales. The court responded that it "agree[d]. There's no evidence in the record by which one could infer that [defendant] was aware that Gonzales had an intent to kill." Defendant contended that an evidentiary hearing was necessary "to get out the facts."

The district attorney argued that "[t]his isn't the time to . . . reweigh evidence" because "[t]hat's not the role of this petition. The jury has made those credibility determinations. [¶] [T]he question is whether [defendant] can . . . credibly, without reweighing the evidence, show that [he is not] a . . . major participant." The district attorney asserted that this case involved "textbook major participation with reckless indifference to human life" and that defendant "need[ed] to present something more" than "a check-box petition." The district attorney argued that defendant had "done absolutely nothing to take these horrific facts that have been established and supplement them and show credibly . . . that he is not somebody who acted with reckless indifference."

Defendant again argued that "this is what the [evidentiary] hearing is supposed to be about" and that there was "nothing in the [robbery] plan . . . that elevated . . . this situation to the risk of a human life beyond those inher[ent] with any [armed] robbery." The court responded, "[D]on't leave out that they cased the scene first. They drove up,

7

pulled into the driveway, saw that there were seven individuals there, drove around the block, came back ten minutes later. [¶] So these are three young Norteno members, two of them armed, with the understanding that three of them are going to go into a group of seven El Salvadorian young men[.] [¶] . . . [¶] And one would expect that they are anticipating, if things go awry, weapons are going to be needed[] to be used." Defendant disputed that "there's any evidence of that" and argued that the court was engaging in "guesswork and speculation[.] [¶] . . . [¶] The fact that they drove around the block, came onto the block, looked, came back again, shows nothing more than a robbery. There is no evidence during that period of time that they were intending or thinking of hurting anybody, and that is what is missing from this case."

The district attorney disagreed, arguing, "We have three violent [VGV] gang members planning a robbery. They pick seven men. There's only three of them. . . . [Defendant's] right up there with his gun. [¶] And it's not a short robbery. This is extended. There's seven men. There's people resisting. There's herding victims back. There's one victim that's injured and then another victim who is threatened and then shot. [¶] And then there's the whole post-robbery conduct. [¶] It's textbook major participant, reckless indifference for human life, and we have nothing credible that contradicts that[.] [Defendant] has done nothing in his petition to credibly" demonstrate that he could not be convicted of murder under current law.

The district attorney urged the superior court to rely on the factual recitation in this court's opinion in case No. H034605, and the court agreed that it was appropriate for it to rely on this court's decision. Defendant disagreed, asserting that the standard for determining whether a prima facie case has been established is different from an appellate decision which recites the facts in the light most favorable to the judgment. Defendant argued that in a prima facie review, the court "look[s] at the evidence from the defense point of view." The court took the matter under submission.

8

The superior court denied the petition at a subsequent hearing. The court determined that at the prima facie stage, the court should evaluate the record of conviction, including the appellate opinion, to determine whether it "present[s] credible, solid evidence such that it can be said that there was sufficient evidence for the jury to find beyond a reasonable doubt the defendant acted with reckless indifference as a major participant[.] [¶] And here there is an abundance of solid, credible evidence such [that] the jury would find beyond a reasonable doubt those facts, and consequently [defendant] has not demonstrated that he could not be convicted on that theory." The court found that defendant had "not negated what's contained in the record by offering any new or different evidence"; Gonzales was well known to defendant; defendant planned the robbery with Gonzales; defendant procured the gun he used to corral one or more of the robbery victims so that they were together when Gonzales shot murder victim in the head; and defendant fled from the crime scene rather than staying to assist.

### III.    DISCUSSION

#### A.    *Senate Bill No. 1437's Statutory Framework and Our Standard of Review*

The Legislature enacted Senate Bill No. 1437 (Senate Bill 1437) to "amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant of the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The bill amended sections 188 and 189, which pertain to the definition of malice and the degrees of murder. (Stats. 2018, ch. 1015, §§ 2-3.)

The Legislature amended section 188 by adding subdivision (a)(3), which provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2; § 188, subd. (a)(3).) And section 189, subdivision (e), now limits liability

9

for murder to a person who was either the actual killer or, though not the actual killer, acted "with intent to kill" and "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer" in the commission of first degree murder, or was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 1015, § 3; § 189, subd. (e).)

In addition to the amendments to sections 188 and 189, Senate Bill 1437 added section 1170.95, which allows "[a] person convicted of felony murder or murder under the natural and probable consequences theory" to petition the sentencing court to vacate the murder conviction and be resentenced on any remaining counts.[7] (Stats. 2018, ch. 1015, § 4; § 1170.95, subd. (a).) All of the following conditions must apply to warrant section 1170.95 relief: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecutor to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[; and] [¶] (3) The petitioner could not be convicted of

---

[7] There are two cases involving the statutory interpretation of section 1170.95 pending before the California Supreme Court. In *People v. Strong*, the court will determine whether a felony-murder special circumstance finding rendered before the court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) precludes a defendant from making a prima facie showing under section 1170.95. (*People v. Strong* 2020 Cal.App.Unpub.LEXIS 8505, review granted Mar. 10, 2021, S266606.) In *People v. Duke*, the court will decide whether, after an order to show cause has issued, the district attorney must establish a defendant's ineligibility for relief by proving each element of murder liability under current law beyond a reasonable doubt or if it can meet its burden by presenting substantial evidence of the defendant's murder liability under the revised murder statutes. (*People v. Duke* (2020) 55 Cal.App.5th 113, review granted Jan. 13. 2021, S265309.)

first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

A section 1170.95 petition is required to include: "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [And] [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1).) "[U]pon the filing of a facially sufficient petition," the statute "requir[es] that counsel be appointed." (*People v. Lewis* (2021) 11 Cal.5th 952, 970 (*Lewis*).) "[T]hen the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. (§ 1170.95, subd. (c).)" (*Id*. at p. 960.)

If the court finds that a prima facie showing has been made, it issues an order to show cause and holds a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (§ 1170.95, subd. (d)(1).) The burden of proof at the hearing is on the prosecution "to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Id.*, subd. (d)(3).) Both parties may rely on the record of conviction or present new or additional evidence at the hearing. (*Ibid.*) Alternatively, "[t]he parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have his or her murder conviction vacated and for resentencing. If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner." (*Id.*, subd. (d)(2).)

We determine questions of statutory interpretation de novo. (See *People v. Prunty* (2015) 62 Cal.4th 59, 71.) Whether the superior court properly denied defendant's section 1170.95 petition for failure to state a prima facie case for relief involves multiple standards of review. We review the court's factual findings for substantial evidence and

11

the court's application of those facts to section 1170.95 de novo. (See *People v. Drayton* (2020) 47 Cal.App.5th 965, 981 (*Drayton*), overruled on another ground in *Lewis*, *supra*, 11 Cal.5th at pp. 962-970.)

## B.    *Defendant Established a Prima Facie Case of Entitlement to Relief*

Defendant contends that the superior court applied the incorrect standard when assessing whether he stated a prima facie case for relief. Quoting our decision in *Drayton*, defendant argues that the court " 'should not have evaluated and weighed the evidence but instead should have accepted [his] asserted facts as true,' " and that based on the asserted facts, an order to show cause should have issued. The Attorney General concedes that the superior court erred in denying the petition "by improperly drawing factual inferences from the record." (Capitalization and bold omitted.) In an amicus brief, the Santa Cruz County District Attorney asserts that the superior court properly denied the petition because defendant "did not state a prima facie case for relief because he did not show a reasonable likelihood that he was entitled to relief and that the relief was dependent on the resolution of a disputed issue of fact."

### 1.  The Prima Facie Inquiry Under Section 1170.95

In *Lewis*, the California Supreme Court recently held that a superior court may consider the record of conviction in determining whether a defendant has stated a prima facie case for relief.[8] (*Lewis*, *supra*, 11 Cal.5th at p. 970; see also *id.* at p. 972 ["Appellate opinions . . . are generally considered to be part of the record of conviction"].) The court stated that "[w]hile the [superior] court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a

---

[8] The court also held that counsel must be appointed "upon the filing of a facially sufficient petition." (*Lewis*, *supra*, 11 Cal.5th at p. 970.)

preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." ' [Citation.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citation.]" (*Id.* at p. 971.)  The court cautioned that "[i]n reviewing any part of the record of conviction at [the prima facie stage], a [superior] court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]  As the People emphasize, the 'prima facie bar was intentionally and correctly set very low.' " (*Id.* at p. 972.)

The district attorney, whose amicus brief was filed before the California Supreme Court decided *Lewis*, urges us to equate a petitioner's prima facie burden under section 1170.95 to a Proposition 47 petitioner's burden to establish entitlement to an evidentiary hearing.  Proposition 47 reduced certain offenses from felonies to misdemeanors and permitted a defendant to petition for the recall of his or her sentence if he or she "would have been guilty of a misdemeanor . . . had [Proposition 47] been in effect at the time of the offense." (§ 1170.18, subd. (a).)  Section 1170.18 provides for the recall of sentence under Proposition 47.  The district attorney focuses on the fact that under both section 1170.18 and in habeas proceedings, an evidentiary hearing is only " 'required if, after considering the verified petition, the return, any denial, any affidavits or declarations under penalty of perjury, and matters of which judicial notice may be taken, the court finds there is a reasonable likelihood that the petitioner may be entitled to relief and the petitioner's entitlement to relief depends on the resolution of an issue of fact.' " (*People v. Romanowski* (2017) 2 Cal.5th 903, 916 [importing the habeas

13

rule regarding evidentiary hearings into section 1170.18 proceedings]; Cal. Rules of Court, rule 4.551(f)[9] [rule of court pertaining to habeas proceedings].)

Although the California Supreme Court has analogized section 1170.95 proceedings to habeas proceedings (see *Lewis*, *supra*, 11 Cal.5th at p. 971), as have we (see *Drayton*, *supra*, 47 Cal.App.5th at p. 977), there is an important distinction between section 1170.95 proceedings and habeas proceedings that is fatal to the district attorney's argument. Unlike habeas proceedings, where the determination that an evidentiary hearing is required is entirely separate from whether the petitioner has stated a prima facie case for relief such that an order to show cause must issue (see rule 4.551(c)(1), (f)), under section 1170.95 a petitioner is entitled to an evidentiary hearing once he or she has stated a prima facie case (see § 1170.95, subd. (d)(1)). Thus, the habeas rule, which has been extended to Proposition 47 proceedings, that an evidentiary hearing is "required if . . . the court finds there is a reasonable likelihood that the petitioner may be entitled to relief and the petitioner's entitlement to relief depends on the resolution of an issue of fact," is inapplicable here. (Rule 4.551(f).) Rather, in section 1170.95 proceedings, the determination that a petitioner has stated a prima facie case and that an evidentiary hearing is required is one and the same. (See § 1170.95, subds. (c), (d)(1).) Under *Lewis* and section 1170.95, at the prima facie stage, " ' "the [superior] court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause" ' " and afford the petitioner an evidentiary hearing. (*Lewis*, *supra*, at p. 971; § 1170.95, subd. (d)(1).)[10]

---

[9] All further rule references are to the California Rules of Court.

[10] The district attorney also contends that defendant's "argument[s] as to the facts are not really factual disputes, but a legal argument," and that a prima facie showing should require a section 1170.95 petitioner "to do more than check a few boxes without any reference to the record of the case." The district attorney points to *People v. Garcia* (continued)

## 2. The Superior Court Erred Because It Applied the Incorrect Standard and Weighed Facts in the Record

The superior court found that at the prima facie stage, it should evaluate the record of conviction to determine whether it "present[s] credible, solid evidence such that it can

(2020) 57 Cal.App.5th 100, review granted February 10, 2021, S265692 (*Garcia*), where our colleagues in Division Six of the Second District determined that because "substantial evidence supports a murder conviction based on a direct aiding and abetting theory, [the petitioner's] conclusory allegations in his petition do not constitute a prima facie showing that he could not be convicted of murder based on this theory" (*id.* at p. 115).

We respectfully conclude that *Garcia*'s use of the substantial evidence test is at odds with the California Supreme Court's statement in *Lewis* that at the prima facie stage of section 1170.95 proceedings, unless the record of conviction " ' "contain[s] facts refuting the allegations made in the petition," ' " a superior court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

Moreover, we observe that defendant *did* plead facts, by way of a declaration signed under penalty of perjury, that, if true, *would* entitle him to relief. In the habeas context at least, in the absence of evidence necessarily demonstrating otherwise, defendant's declaration would suffice to establish a prima facie case and trigger the issuance of an order to show cause. (See *People v. Duvall* (1995) 9 Cal.4th 464, 475 (*Duvall*).) While it is true that legal arguments generally do not satisfy a party's pleading burden (see *id.* at p. 474), the "rule which applies to all kinds of pleading, whether criminal or civil," is that "ultimate facts are to be pleaded" (*People v. Tinnen* (1920) 49 Cal.App. 18, 23; see also *Burke v. Superior Court of Sacramento County* (1969) 71 Cal.2d 276, 279, fn. 4 ["the general rule [is] that a complaint must contain only allegations of ultimate facts as opposed to allegations of evidentiary facts or of legal conclusions or arguments"]). As we stated above, among other allegations, defendant alleged that he was not a major participant who acted with reckless indifference to human life, which was an "ultimate fact" pleaded in support of his legal argument that he could not now be convicted of first or second degree murder under current law. (*People v. Thompson* (1980) 27 Cal.3d 303, 315, fn. 13, disapproved of on other grounds as stated in *People v. Scott* (2011) 52 Cal.4th 452, 470-471; see also *People v. McCall* (2004) 32 Cal.4th 175, 182; *People v. Nunez* (2020) 57 Cal.App.5th 78, 89 [affirming the denial of a section 1170.95 petition because the petitioner did not provide factual support for the legal conclusion stated in his petition that he could not be convicted of murder under current law by, for example, "check[ing] box[] 5" on the form, which stated that petitioner was not a major participant who acted with reckless indifference to human life].) Here, given that defendant did allege the ultimate fact that he was not a major participant who acted with reckless indifference to human life and that the district attorney contended otherwise, there was a factual dispute below.

15

be said that there was sufficient evidence for the jury to find beyond a reasonable doubt the defendant acted with reckless indifference as a major participant." Despite defendant's allegations that he was not a major participant in the felony underlying the murder and that he did not act with reckless indifference to human life, the superior court concluded that "there is an abundance of solid, credible evidence such [that] the jury would find beyond a reasonable doubt" that "defendant acted with reckless indifference as a major participant," and that "consequently [defendant] has not demonstrated that he could not be convicted on that theory." The superior court's ruling was in error because in reaching its decision, the court did not take defendant's " ' "factual allegations as true and make[] a preliminary assessment regarding whether [he] would be entitled to relief if his . . . factual allegations were proved." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

The superior court also weighed facts in the record. (Contra *Lewis*, *supra*, 11 Cal.5th at p. 972.) Defendant argued below that he was not a major participant who acted with reckless indifference to human life based on record evidence that Gonzales "put the shotgun on [Escobar's] forehead and fired" after Escobar refused to give up his money and that Escobar was killed "immediately." Defendant asserted that there was no evidence that he "was in a position just before the shooting to observe anything in [Gonzales's] actions . . . that would have indicated that [Gonzales] was likely to engage in lethal violence at that time, and that [he] realistically had time to intervene and prevent the killing. It appears that the shooting in this case occurred only seconds after [Escobar] resisted [Gonzales's] attempts . . . to take and carry away [Escobar's] money. Nor is there any evidence that once . . . Gonzales did the shooting, . . . [defendant] could have done anything at that point. . . . [¶] [T]here is no evidence from which it reasonably can be inferred . . . that he anticipated the potential for loss of human life beyond that usually accompanying an armed robbery." Defendant further asserted that "all the evidence shows [the shooting] was a spur of the moment" decision by Gonzales and that "[t]here is

16

no evidence . . . that they were intending or thinking of hurting anybody" when defendant and his coparticipants scoped out the scene and returned to commit the robbery.

The superior court rejected defendant's argument, reaching its decision that defendant was a major participant who acted with reckless indifference to human life based on record evidence that Gonzales was well known to defendant; defendant planned the robbery with Gonzales; defendant procured the gun he used to corral one or more of the robbery victims so that they were together when Gonzales shot Escobar in the head; and defendant fled from the crime scene rather than staying to assist.

In making these findings, the superior court weighed the evidence and made credibility determinations to resolve the disputed issues of whether defendant was a major participant in the underlying felony and whether he acted with reckless indifference to human life. (See *Drayton*, *supra*, 47 Cal.App.5th at p. 982; see also *Banks*, *supra*, 61 Cal.4th at p. 803 [discussing factors that "may be weighed" in determining whether a defendant was a major participant in the underlying felony].) However, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a [superior] court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Lewis*, *supra*, 11 Cal.5th at p. 972.) While it may be possible to infer defendant's role in the offense and his mens rea by evaluating and weighing the facts as stated in the record of conviction, at the prima facie stage the superior court was obligated to accept defendant's allegations as true unless they were conclusively refuted by the record of conviction. (See *Lewis*, *supra*, at p. 971; *People v. Barboza* (2021) 68 Cal.App.5th 955, 965-966; *Drayton*, *supra*, at pp. 979-980.) Because the allegations were not conclusively refuted by the record of conviction, the superior court erred when it determined that defendant was a major participant who acted with reckless indifference to human life. (See *Drayton*, *supra*, at p. 982.)

The district attorney contends that defendant's "arguments as to why he was not a major participant who acted with reckless indifference . . . do not appear to be factors that

17

a court would consider when making a determination as to whether someone is a major participant who acted with reckless indifference."

In *Banks* and *Clark*, the California Supreme Court discussed factors to consider in determining whether a defendant was a major participant who acted with reckless indifference to human life such that there is sufficient evidence to support a felony-murder special circumstance finding. In *Banks*, the court held that to qualify as a major participant, "a defendant's personal involvement [in the underlying felony] must be substantial," and identified five factors relevant to that analysis. (*Banks*, *supra*, 61 Cal.4th at pp. 802, 803.) Factors to consider regarding whether a defendant was a major participant are: (1) "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?"; (2) "What role did the defendant have in supplying or using lethal weapons?"; (3) "What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?"; (4) "Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?"; and (5) "What did the defendant do after lethal force was used?" (*Id.* at p. 803, fn. omitted.)

In *Clark*, the court determined that reckless indifference to human life has "both subjective and objective elements." (*Clark*, *supra*, 63 Cal.4th at p. 617.) "The subjective element is the defendant's conscious disregard of [the grave] risks [of death] known to him or her." (*Ibid.*) As to the objective element, " '[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.' " (*Ibid.*) Factors to consider are: (1) the defendant's knowledge of weapons, the number of weapons, and whether the defendant used a weapon; (2) the defendant's physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) the

18

duration of the underlying felony; (4) the defendant's knowledge of his or her cohort's likelihood of killing; and (5) the defendant's efforts to minimize the risks of violence during the underlying felony. (*Id.* at pp. 618-622.)

Defendant's arguments below related both to whether he was a major participant and whether he acted with reckless indifference. Specifically, regarding the major participant determination, the arguments pertained to defendant's "awareness . . . of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants," whether he was "in a position to facilitate or prevent the actual murder, and [whether] his . . . actions or inaction play[ed] a particular role in the death." (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted.) Regarding reckless indifference, the arguments pertained to defendant's "opportunities to restrain the crime and/or aid the victim" and his "knowledge of [his] cohort's likelihood of killing." (*Clark*, *supra*, 63 Cal.4th at pp. 619, 621, capitalization and emphasis omitted.)

For these reasons, we conclude that the superior court erred when it denied the petition because it failed to take " ' "petitioner's factual allegations as true" ' " and "engage[d] in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, *supra*, 11 Cal.5th at pp. 971, 972.) Accordingly, we will reverse the superior court's order determining that defendant failed to establish a prima facie case of entitlement to relief under section 1170.95. We will remand the matter for the issuance of an order to show cause and a hearing on defendant's section 1170.95 petition. (See *Drayton*, *supra*, 47 Cal.App.5th at pp. 982-983; § 1170.95, subds. (c), (d).) We express no opinion regarding defendant's entitlement to relief following the hearing.

## IV. DISPOSITION

The superior court's order denying defendant's Penal Code section 1170.95 petition is reversed. The matter is remanded to the superior court with directions to issue an order to show cause (Pen. Code, § 1170.95, subd. (c)) and hold a hearing on the petition (Pen. Code, § 1170.95, subd. (d)).

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
DANNER, J.

*People v. Soto*
**H047919**